**Opinion on rehearing issued September 4, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-12-00406-CV

—————————————

**WOODY K. LESIKAR, INDIVIDUALLY AND AS TRUSTEE
OF THE WOODY K. LESIKAR SPECIAL TRUST AND AS TRUSTEE
OF THE WOODROW V. LESIKAR FAMILY TRUST, Appellants**

**V.**

**CAROLYN ANN LESIKAR MOON, INDIVIDUALLY AND
AS TRUSTEE OF THE CAROLYN ANN LESIKAR
MOON SPECIAL TRUST, Appellees**

---

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Case No. 2008-65920**

---

**MEMORANDUM OPINION ON REHEARING**

This appeal is the most recent round in a protracted legal battle between two siblings over their respective inheritances.[1] Woody K. Lesikar, individually, and as trustee of the Woody K. Lesikar Special Trust and the Woodrow V. Lesikar Family Trust, appeals the trial court's summary judgment in favor of Carolyn Ann Lesikar Moon, individually and as trustee of the Carolyn Ann Lesikar Moon Special Trust, and the trial court's denial of summary-judgment motions brought by Woody's trust and the family trust.

Woody has moved for rehearing. We deny his motion, but we vacate the prior opinion and judgment issued May 13, 2014 and issue this corrected opinion and judgment in their stead.

Woody contends that the trial court erred in (1) granting summary judgment in Carolyn's favor, (2) awarding Carolyn her attorney's fees, and (3) refusing to rule on his special exception to Carolyn's motion for summary judgment and his motion to supplement the summary-judgment record. We reverse the summary judgment on Carolyn's fraudulent transfer claim and the disposition of the

---

[1] *See generally Lesikar v. Moon*, No. 14-11-01016-CV, 2012 WL 3776365 (Tex. App.—Houston [14th Dist.] Aug. 30, 2012, pet. denied) (mem. op.); *Woody K. Lesikar Special Trust v. Moon*, No. 14-10-00119-CV, 2011 WL 3447491 (Tex. App.—Houston [14th Dist.] Aug. 9, 2011, pet. denied) (mem. op.); *Lesikar v. Moon*, 237 S.W.3d 361, 364–65 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Moon v. Lesikar*, 230 S.W.3d 800 (Tex. App.—Houston [14th Dist.] 2007, pet. denied.); *In re Lesikar*, No. 14-06-01041-CV, 2007 WL 1624965 (Tex. App.—Houston [14th Dist.] June 7, 2007, orig. proceeding) (mem. op.).

parties' attorney's-fee claims, and we remand those claims for further proceedings. We affirm the judgment in all other respects.

## Background

### A. The Family Trust

In January 1990, Woody and Carolyn's father, Woodrow Lesikar, created the family trust, naming himself and Woody as co-trustees. The family trust provided that, on Woodrow's death, certain trust assets would be divided equally and transferred into two separate trusts, one for Woody and the other for Carolyn. Woodrow died in January 2001, leaving Woody the sole trustee of the family trust and executor of Woodrow's estate.

### B. The 2003 Brazoria County Suit

In August 2003, Carolyn sued Woody in his capacities as executor of Woodrow's estate and as trustee of the family trust. Carolyn's petition sought a declaration interpreting the trust provisions creating Woody's and Carolyn's trusts and to compel Woody to fund and relinquish control of Carolyn's trust. The petition asserted claims against Woody for breach of fiduciary duty, conversion, negligence, civil conspiracy, and tortious interference with inheritance and sought as relief an injunction, an accounting, the imposition of a constructive trust, and the appointment of a receiver. The petition particularly challenged the family trust's

sale to Woody of stock in the West Houston Airport Corporation, because Woody also was West Houston's president.

In the 2003 case, the parties first moved for summary judgment on the stock sale issue. The trial court granted summary judgment for the defendants on that issue and severed it from the remaining claims. Carolyn unsuccessfully appealed the trial court's resolution of the stock issue. *See Moon v. Lesikar*, 230 S.W.3d 800 (Tex. App.—Houston [14th Dist.] 2007, pet. denied.).

Aside from Carolyn's tort claims against Woody, the issues remaining before the trial court were construction of the family trust and division of its assets. The Brazoria County trial court considered the parties' summary judgment motions and interpreted the family trust as requiring Woody, as its trustee, to fund the special trusts for Woody and Carolyn and to appoint Carolyn trustee of her own trust. *Lesikar v. Moon*, 237 S.W.3d 361, 367–68 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). For assistance in dividing the trust assets, the trial court appointed a special master to examine the family trust's books and records, to prepare a report to the court identifying its assets and their value at the time of Woodrow's death, determining which assets could be divided in kind, and ascertaining the current value of the assets which could not be divided in kind. The trial court further tasked the special master with devising a plan to "fairly, equitably, and prudently" divide the assets. *Id.* at 371.

4

In June 2005, the trial court adopted all of the special master's report and recommendations addressing valuation and distribution, but it did not adopt the section concerning attorney's fees. It conducted a bench trial on attorney's fees, ultimately ruling in favor of Carolyn's claim. *Id.* at 365–66.

In its September 2005 judgment, the trial court:

- designated the assets intended for the family trust's other beneficiaries, including $250,000 in principal to provide income interest for the lifetime of Woodrow's elderly widow, Margie, and setting aside funds designated for Woodrow's grandchildren.
- divided and distributed the remainder of the family trust's real property and other assets into Woody's trust and Carolyn's trust;
- declared Carolyn the trustee of her trust; and
- ordered that the funds set aside for Margie be divided equally between Woody's trust and Carolyn's trust within thirty days after Margie's death.

The judgment also awarded Carolyn $400,000 in attorney's fees which, after being adjusted to equalize the division of assets between Woody's and Carolyn's trusts and the family trust, resulted in a net fee award of $273,257. Carolyn dismissed her tort claims against Woody, and Woody appealed on behalf of the family trust and his own trust.

Woody next sought to supersede the judgment pending appeal. In its supersedeas order, the Brazoria County trial court included specific restrictions relating to the real property distributed to Carolyn's trust under the judgment,

5

prohibiting Woody from disposing or encumbering it "in any manner to obtain the amount needed to satisfy this supersedeas requirement."

While the 2005 Brazoria County judgment was pending on appeal, Margie died. Her death triggered the duty to distribute $125,000 from the family trust to Carolyn's trust. Woody, as trustee of the family trust, sought to supersede this duty pending appeal. The trial court ordered Woody to provide a supplemental supersedeas bond to cover the distribution owed to Carolyn's trust and to prohibit Woody "from selling, encumbering, or otherwise depleting [Carolyn]'s portion of the trusts' assets for [payment of the family trust's] attorney's fees."

The Fourteenth Court of Appeals issued its opinion and judgment on the same day it decided the earlier severed cause. 237 S.W.3d 361. It affirmed the Brazoria County trial court's judgment except for the attorney's fee award. *Id.* at 378–79. The record did not contain any evidence segregating the attorney's time spent on claims for which attorney's fees were recoverable from those for which Carolyn could not recover her attorney's fees. As a result, the appellate court reversed and remanded that issue for further proceedings. *Id.*

On remand, the Brazoria County trial court held a jury trial on the attorney's fee issue. The jury returned a verdict awarding Carolyn $375,000 in attorney's fees, and the trial court entered judgment on the verdict (the "2009 Brazoria County Judgment"). The family trust, Woody's trust, and Woodrow's estate also

6

appealed that judgment, which the Fourteenth Court of Appeals affirmed. *See Lesikar v. Moon*, No. 14–11–01016–CV, 2012 WL 3776365 (Tex. App.—Houston [14th Dist.] Aug. 30, 2012, pet. denied) (mem. op.).

### C.  The 2008 Harris County Suit

In November 2008, Woody, acting individually and as trustee of his trust, filed suit in the 334th Judicial District Court of Harris County against Carolyn, her trust, and the family trust. Woody alleged that he personally advanced the family trust $600,000 to pay for attorney's fees that the family trust "was forced to expend" in defending the Brazoria County suit and in the foreclosure and sale of liens Woody placed on various properties listed in the family trust to fund the claimed debt. The petition sought a declaration that Woody had the right to reimbursement for the loan and other expenses as well as reimbursement or foreclosure of the liens he had placed on the trust properties. Woody also sought to have the family trust, Carolyn's trust, or Carolyn individually, turn over the $200,000 note receivable from West Houston Airport that the 2005 Brazoria County Judgment awarded to Woody's trust. Woody and his trust further claimed $800,000 in reimbursement for services and advances Woody provided as trustee of the family trust. The suit asked the Harris County court to determine the amount and validity of the family trust's outstanding debts, to order the family

7

trust to reimburse him for those debts and, if necessary, to order the sale of the family trust's real property to satisfy any deficiency.

Three days after filing the Harris County suit, Woody recorded liens and lis pendens in the Harris County real property records on the real property distributed to his trust under the Brazoria County judgment. In November 2008, Woody also signed a deed of trust encumbering that property to benefit West Houston Airport Corporation.

Carolyn answered the Harris County suit and asserted the affirmative defenses of res judicata, collateral estoppel, and collateral attack on the judgment. Carolyn later counterclaimed against Woody and his trust and brought a cross-action against the family trust claiming that Woody and his trust violated the Uniform Fraudulent Transfer Act (UFTA) by placing fraudulent liens on property either that the 2005 Brazoria County judgment had ordered Woody to transfer to Carolyn's trust or that Carolyn had owned before that judgment. *See* TEX. BUS. & COM. CODE ANN. §§ 24.005(a), 24.006(a)) (West 2009). In addition, Carolyn sought a declaration that neither Woody nor his trust had the authority to place liens on her trust's properties and that the liens were void because her trust—and not the family trust—held title to those properties.

Woody and his trust responded with, among other things, the defenses of res judicata, collateral estoppel, judicial and quasi-estoppel, good faith, and fair and

8

equivalent consideration under the UFTA. They also claimed that they were entitled to an additional $126,500 offset against any of Carolyn's monetary claims based on the 2005 Brazoria County Judgment.

### 1. 2010 Brazoria County application for turnover relief

In January 2010, Carolyn returned to the Brazoria County trial court to seek turnover relief on the Brazoria County judgment. She informed the Brazoria County trial court that Woody had violated the orders superseding the judgment by recording liens on the property awarded to her trust. She asked the court to order Woody to turn over the property the court had awarded to Carolyn's trust and to "permanently enjoin Woody from interfering with Carolyn's ownership, use, and enjoyment of the property."

The Brazoria County trial court tried the turnover issue and ordered the family trust to distribute to Carolyn's trust the $125,000 owed after Margie's death and to remove the liens encumbering Carolyn's trust property. The surety on the Brazoria County supplemental supersedeas bond paid the $125,000. Woody signed releases of the liens, but also appealed the turnover order. The trial proceeded without Woody, who was not personally served in either his individual or trustee capacities and was not an individual party to the litigation. Counsel for Woody's trust and the family trust appeared and participated.

In August 2011, the Fourteenth Court of Appeals affirmed the portion of the Brazoria County trial court's turnover order requiring the $125,000 payment, but modified the portion requiring Woody to release the liens, holding that such relief could not be obtained by turnover order. *See Woody K. Lesikar Special Trust*, 2011 WL 3447491, at *8.[2]

### 2.    Motions for summary judgment in Harris County suit

Meanwhile, Carolyn moved for summary judgment in the Harris County suit on traditional and no-evidence grounds, contending, among other things, that

- Woody's suit is an impermissible collateral attack on the 2005 Brazoria County judgment,
- Woody's claims are barred by res judicata and collateral estoppel, and
- Carolyn's trust property is not subject to any of Woody's liens.

In a cross-motion for summary judgment, the family trust opposed Carolyn's affirmative defenses and sought a ruling that Carolyn's res judicata, collateral estoppel, and collateral attack defenses did not apply to its claims as a matter of law and that, as a result, its reimbursement and other claims could go

---

[2]   "[W]e decline to remand the case to the trial court and instead modify the trial court's turnover order by removing only those provisions (1) ordering the release of 'all liens or encumbrances of any type recorded against property awarded to the Carolyn Ann Lesikar Moon Special Trust in the Final Judgment signed September 15, 2005 . . .;' (2) ordering Woody to 'sign or execute any other documents . . . to clear any title issues relating to the property . . .;" and (3) prohibiting Woody from "executing, filing, placing, or recording any liens or encumbrances of any type against the property . . . .'  We affirm the trial court's turnover order as modified." *Woody K. Lesikar Special Trust*, 2011 WL 3447491, at *8.

forward. Woody and his trust also moved for summary judgment, contending that:

- as a trustee, Woody has a statutory right to reimbursement as a matter of law,
- the portion of the 2005 Brazoria County judgment ordering distribution of the funds following Margie's death is unenforceable,
- Woody's trust has the right to recover the West Houston stock receivable awarded by the Brazoria County judgment,
- any attorney's fees award to Carolyn is subject to an offset under the 2005 Brazoria County judgment, and
- Woody's liens are entitled to priority over the family trust's other debtors.

The Harris County trial court granted summary judgment on Carolyn's affirmative defenses and denied the motion on the remaining grounds. It denied Woody's cross-motion for partial summary judgment and the family trust's motion for partial summary judgment.

Carolyn next moved for summary judgment on Woody's counterclaim and cross-action. Woody specially excepted to the motion and noticed the special exception for hearing on the same date as Carolyn's summary-judgment motion. The day of the hearing, Woody moved for leave to file exhibits that had been omitted from the original filing of his response. At the conclusion of the summary judgment hearing, the trial court told the parties that it would review Carolyn's objections and the special exception before ruling.

In September 2011, the trial court granted Carolyn's motion for summary judgment. At a hearing several weeks later, Woody's counsel asked the trial court about the absence of a ruling on the special exception. The trial court responded that, "The special exception was to a motion for summary judgment that [was] granted, so [it was] denied, I guess." When counsel asked the court to sign an order specifically denying the special exception, the court demurred, explaining "[it is] moot now."

The trial court then signed a final judgment incorporating its prior summary judgment rulings, voiding Woody's liens and encumbrances on property distributed to Carolyn's trust in the Brazoria County judgment, enjoining further encumbrances, and awarding Carolyn her attorney's fees.

## Discussion

### I. Summary Judgment Standard of Review

Woody, individually and as trustee of his trust and the family trust, contends that the trial court erred in granting Carolyn and her trust's motions for summary judgment and denying his cross-motions for summary judgment. We review a trial court's decision to grant or to deny a motion for summary judgment de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007). "When both sides move for summary judgment, as they did here, and the trial court grants one motion and denies the other, reviewing courts consider both sides'

12

summary-judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered." *Gilbert Tex. Constr., Inc. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010) (citing *Embrey v. Royal Ins. Co. of Am.*, 22 S.W.3d 414, 415–16 (Tex. 2000)).

To prevail on a traditional summary-judgment motion, a movant has the burden of proving that it is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a plaintiff moves for summary judgment on its claim, it must establish its right to summary judgment by conclusively proving all the elements of its cause of action as a matter of law. *Rhône Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Anglo-Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87, 95 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in its favor. *Id.* at 549.

A defendant who moves for summary judgment based on an affirmative defense bears the burden of conclusively proving each essential element of that defense. *Fed. Dep. Ins. Corp. v. Lenk*, 361 S.W.3d 602, 609 (Tex. 2012) (quoting

13

*Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996) (per curiam)).  Once a defendant establishes a right to summary judgment, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact on at least one element of the defendant's affirmative defense.  *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).  Evidence is conclusive only if reasonable people could not differ in their conclusions.  *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).  A defendant who conclusively establishes an affirmative defense is entitled to summary judgment on that claim.  *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

After an adequate time for discovery has passed, a party without the burden of proof may move for summary judgment on the ground that the nonmoving party lacks supporting evidence for one or more essential elements of its claim.  TEX. R. CIV. P. 166a(i);  *see also Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004) (explaining that to prevail on no-evidence summary judgment motion, movant must allege there is no evidence of essential element of adverse party's cause of action).  "The motion must state the elements as to which there is no evidence."  TEX. R. CIV. P. 166a(i); *see also Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (no-evidence motion for summary judgment must be specific in challenging evidentiary support for an element of claim or defense).

14

## II. Res Judicata

The doctrine of res judicata bars parties from collaterally attacking a prior final judgment. *Matthews Constr. Co. v. Rosen*, 796 S.W.2d 692, 694 (Tex. 1990). A party seeking dismissal of a suit based on res judicata must prove (1) the existence of a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a subsequent action based on the same claims that were or could have been raised in the prior action. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *Houtex Ready Mix Concrete & Materials v. Eagle Constr. & Envtl. Servs., L.P.*, 226 S.W.3d 514, 519 (Tex. App.—Houston [1st Dist.] 2006, no pet.). "[A] judgment is final for the purposes of issue and claim preclusion 'despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo.'" *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986) (op. on reh'g) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. f (1982)).

Res judicata applies to persons in privity with a party to the prior judgment—that is, a person who is so connected with a party to the prior judgment that the party represented the same legal right. *See Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971). For purposes of res judicata, this identity of interest exists when: (1) the person can control an action even if he is not a party to it; (2) the party to the prior action represented the person's interests; or (3) the

person is a successor-in-interest to the party in the prior action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996). To determine whether res judicata bars a subsequent suit, we examine the circumstances of each case to identify any interests the parties may share. *See Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 800–01 (Tex. 1992).

## A. Application of res judicata to Woody's individual claims

Woody contends that the trial court erred in granting Carolyn summary judgment on her res judicata defense because the evidence does not prove, as a matter of law, that Woody, individually, shared an identity of interest with any party to the Brazoria County judgment. Woody relies on section 36 of the Restatement (Second) of Judgments, which the Texas Supreme Court adopted in *Gracia v. RC Cola–7-Up Bottling Co.,* 667 S.W.2d 517 (Tex. 1984). Section 36 provides that:

> A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity.

RESTATEMENT (SECOND) JUDGMENTS § 36(2) (1982), *quoted in Gracia*, 667 S.W.2d at 519. But a person's appearance in a different capacity does not dictate whether a prior judgment bars the subsequent suit. Comment (c) to section 36 explains that the analysis focuses on shared interests, not nominal

16

capacity: "A person who appears in a representative capacity in behalf of interests that include his own individually is bound by the judgment in his individual capacity not because he is the same person who was previously a party but by virtue of his representative status in the first action." RESTATEMENT (SECOND) JUDGMENTS § 36 cmt. c; *see also Slay v. Burnett Trust*, 187 S.W.2d 377, 383 (Tex. 1945) (stating that beneficiary who knows that trustee is prosecuting suit for its benefit and acquiesces to such action is bound by judgment, even though beneficiary is not named party to trustee's suit).

### 1. Woody's identity of interest with parties to Brazoria County suit

Woody complains that res judicata does not bar the claims he brought in his individual capacity because he did not appear individually in the Brazoria County suit. Both Woody's trust and the family's trust appeared in the Brazoria County suit through Woody, their trustee. As trustee, Woody made the decisions on behalf of both trusts, such as hiring attorneys to represent them and making decisions such as whether to pursue an appeal.

Woody relies on *Flying Diamond-West Madisonville L.P. v. GW Petroleum, Inc.*, No. 10-07-00281-CV, 2009 WL 2707405 (Tex. App.—Waco, Aug. 26, 2009, no pet.) (mem. op.), to support his contention that his involvement in a different capacity did not preclude the claims he brought in the Harris County suit. The facts in *Flying Diamond*, however, are inapposite. There, Sol Levine participated

17

in a limited partnership named Flying Diamond-West Madisonville Limited Partnership, which the general partner, Flying Diamond, created for the purpose of owning and developing oil and gas leases in Utah. *Id.* at *1. In 1977, Levine, individually, sued Flying Diamond in federal court. The parties settled that suit in 1982 and dismissed their claims with prejudice. *Id.* In 1990, Levine sued Flying Diamond's successor-in-interest, Great Western, this time both individually and on behalf of the Madisonville Partnership in a derivative capacity as a limited partner. *Id.* The court of appeals held that the trial court properly allowed the claims brought on behalf of the Madisonville Partnership to proceed, concluding that no identity of parties existed between Levine individually and Levine in a derivative capacity as Madisonville Partnership's limited partner, noting that neither the Madisonville Partnership nor any of its other limited partners was a party in the New York litigation. *Id.* at *6.

As sole trustee and sole beneficiary of his own trust, Woody acknowledges that he and his trust had the same interests in the Brazoria County suit. The Brazoria County judgment confirms the identity of interest; when the Brazoria County trial court distributed the family trust property pursuant to the special master's report, Woody acquired a full ownership interest of the assets distributed to his trust. *See Shearrer v. Holley*, 952 S.W.2d 74, 78 (Tex. App.—San Antonio 1997, no writ) (confirming that acquisition of full ownership interest occurs

18

through merger of both legal and equitable interests in beneficiary); *Perfect Union Lodge No. 10 v. Interfirst Bank*, *N.A.*, 748 S.W.2d 218, 220 (Tex. 1988) (observing that separation of legal and equitable estates "is the basic hallmark of the trust entity"); *cf.* TEX. PROP. CODE ANN. § 112.034(b) (West 2007) (providing trust generally terminates "if the legal title to the trust property and all equitable interests in the trust become united in one person"). Because both equitable and legal title to all of the assets distributed to Woody's trust merged in the Brazoria County judgment, an identity of interest exists between Woody's participation in the Brazoria County suit and the claims in the Harris County suit brought in his individual capacity. *See Gracia*, 667 S.W.2d at 519 (observing that "a party participating in the judgment is barred by the judgment although not joined in the pleadings").

Woody contends that the Fourteenth Court of Appeals held that the Brazoria County trial court lacked jurisdiction over Woody in his individual capacity, and that as a result, we are foreclosed from finding that Woody has an identity of interest with any party to that proceeding. We disagree. In the turnover appeal, our sister court concluded that Woody's trust, the family trust, and Woodrow's estate—the only appellants in that case—lacked standing to complain of errors that affected only Woody's individual rights. *Woody K. Lesikar Special Trust*, 2011 WL 3447491, at *4. Woody, individually, did not file a notice of appeal in that

19

case.  *Id.*  The opinion indicates that Woody's trust, the family trust, and Woodrow's estate are the only "appellants."  *Id.*; *see also* TEX. R. APP. P. 3.1(a) (defining "appellant" as "a party taking an appeal to an appellate court"); TEX. R. APP. P. 25.1(c) (requiring party who seeks to alter trial court's judgment or other appealable order to file notice of appeal).  The appellate court based its conclusion on the fact that Woody was not a party to the appeal in his individual capacity.  *See Woody K. Lesikar Special Trust*, 2011 WL 3447491, at *4.  Our conclusion that res judicata bars Woody's individual claims in the Harris County suit derives not from his individual participation as a party in the Brazoria County case, but from his participation in the trial court judgment, and his identity of interest with those who were named as parties.  *See Gracia*, 667 S.W.2d at 519.

### 2. Reimbursement claim for the family trust's legal fees

In the Harris County suit, Woody sought a declaration that he had the right to be reimbursed for the $750,000 he loaned to the family trust to pay its attorney's fees pursuant to section 114.063 of the Trust Code.  *See* TEX. PROP. CODE ANN. § 114.063 (West 2007) (providing trustee entitled to reimbursement for advances made and expenses incurred on behalf of trust).  The Harris County trial court denied the request.  Woody and the family trust contend that the trial court erred in concluding that res judicata precludes a claim for reimbursement because the family trust did not incur these attorney's fees and expenses until post-judgment in

the turnover proceedings in that court.  Woody argues that, because they arise from the trust's legal expenses in its appellate and post-judgment efforts and from further litigation after remand in that suit—all of which were incurred after the Brazoria County trial court signed its judgment—a claim for reimbursement could not have been brought before judgment.  We disagree.

First, Texas courts routinely award appellate attorney's fees contingent on the outcome of an appeal, and in connection with requests made post-judgment and in the same proceeding.  Here, however, Woody has made the claim in a collateral proceeding, without seeking the fees in the Brazoria County adjudication in which they were incurred.  In *Fidelity Mutual Life Insurance Company v. Kaminsky*, Kaminsky, after prevailing in a prior suit against the insurance company, brought a separate action to recover attorney's fees he incurred in the first suit.  820 S.W.2d 878, 879 (Tex. App.—Texarkana 1991, writ denied).  The Texarkana Court of Appeals held that res judicata barred the attorney's fee claim, reasoning that a claim for attorney's fees, even when it is contingent on the outcome of a suit, is mature when the claim giving rise to the fees is brought. *Id.* at 882.

Section 114.064 of the Texas Property Code provides that, "[i]n any proceeding under this code the court may make such award of costs and reasonable and necessary attorney's fees as may seem equitable and just."  TEX. PROP. CODE ANN. § 114.064 (West 2007).  To determine whether an award

21

would be equitable and just requires consideration of, among other factors, the size of the expenditure relative to the size of the trust estate. In *John M. Gillis, P.C. v. Wilbur*, 700 S.W.2d 734 (Tex. App.—Dallas 1985, no writ), the Dallas Court of Appeals affirmed a summary judgment that rejected a post-divorce claim for attorney's fees by the attorney who had represented the wife in a divorce action and sought payment for that representation. In reaching this result, the court reasoned that the wife's attorney's fees were an integral part of the division of the parties' estate in the divorce action and, therefore, that res judicata barred the attorney's post-decree claim. *Id.* at 736. The *Gillis* court rejected the claim for attorney's fees because the claim pertained to the "just and right" division of the marital estate pursuant to former section 3.63, currently section 7.001, of the Family Code, *see* TEX. FAM. CODE ANN. § 7.001 (West 2006), and should have been brought in the divorce action. *See* 700 S.W.2d at 736. Because the attorney did not assert his claim for attorney's fees in the divorce action, the claim was barred. *Id.* at 737.

Second, in this case, the Brazoria County trial court arrived at the proper division of the family trust's assets, subject to its disclosed liabilities, and signed a judgment allocating all of the trust's assets to its designated beneficiaries. The special master appointed by the Brazoria County court specifically considered the assets and liabilities of the family trust when she formulated her recommendation

for an equitable and fair division of the family trust's property between Woody's trust and Carolyn's trust. The trial court ordered the distribution of the family trust's property, also considered the family trust's liabilities, to the extent that Woody disclosed them, in determining that it was inappropriate for Carolyn's trust to bear liability for the $200,000 "contingent fee" (e.g., the "note receivable" from West Houston). Woody, as the family trust's trustee, could have fully disclosed the family trust's anticipated attorney's fees to the special master as contingent liabilities, timely objected to the special master's report before the Brazoria County trial court adopted it, or brought a claim for attorney's fees that the family trust expected to incur in connection with the Brazoria County suit. The issue is not whether Woody, as trustee, had the right to seek reimbursement for attorney's fees and expenses on behalf of the trust. As long as the family trust continues to exist, Woody is not legally foreclosed from making a reimbursement claim. *See* TEX. PROP. CODE ANN. § 114.063. The issue is the value of the assets held by the family trust and, consequently, available to reimburse Woody when he makes such a claim. Because Woody did not seek reimbursement for fees and expenses incurred by the trustee in the Brazoria County court, the family trust lost any opportunity to further encumber the assets distributed in the Brazoria County judgment in this satellite litigation.[3] *See Lesikar*, 237 S.W.3d at 374–75 ("[T]he record supports the

---

[3] Woody, as trustee of the family trust and a party in the Brazoria County

23

trial court's finding that it adopted the special master's report on June 6, 2005, and Woody's June 8 objections to the report were not timely.").

Finally, the Brazoria County judgment effectively passed legal title to the property distributed to Carolyn's trust. The supersedeas bond suspended enforcement of the Brazoria County judgment pending appeal; it did not alter any of the rulings it contained. *See* TEX. R. APP. P. 24.1; *Universe Life Ins. Co. v. Giles*, 982 S.W.2d 488, 492 (Tex. App.—Texarkana 1998, pet. denied) ("A supersedeas bond is a contract for the benefit of a judgment creditor; it is not property owned by the judgment debtor."); *see also FaulknerUSA, LP, v. Aaron Supply Co., Inc.*, 301 S.W.3d 345, 347 (Tex. App.—El Paso 2009, no pet.) (explaining that, from judgment creditor's perspective, purpose of supersedeas is to ensure that judgment can be collected if affirmed on appeal). Woody's trustee's liens could not attach to the property that the Brazoria County judgment distributed to Carolyn's trust because the family trust no longer possessed title to

---

case, knew that the judgment had distributed the itemized assets to Carolyn's trust. As a result, Woody, individually, was on notice that those assets no longer belonged to the family trust and, therefore, would not be available to reimburse him for the loan he made to pay the trust's attorney's fees and expenses.

24

it.[4]  To the extent Woody's reimbursement claim seeks to redistribute property disposed of by the Brazoria County judgment, it is precluded.

The family trust further asserts that Moon never claimed that her share of the family trust should not be subject to the family trust's debts and expenses, and the trial court never considered such a claim in the first suit.  But the Trust Code gives a trustee the right to seek reimbursement; it does not require a beneficiary to raise an objection to a claim for reimbursement before one is made.  *See, e.g.*, TEX. PROP. CODE ANN. § 114.063(a)(2) (giving trustee right to reimburse himself from trust principal or income for expenses incurred while administering or protecting trust).

### 3.  Family trust's claim for debts and expenses incurred by its trustee after the Brazoria County judgment

The family trust cites section 249(2) of the Restatement (Second) of Trusts for the proposition that its trustee is entitled to seek reimbursement directly from its beneficiaries if the trustee conveys the trust estate to them without deducting the amount he is due.  Subdivision (2) of section 249 of the Restatement (Second) of Trusts states:

> If the trustee is entitled to indemnity out of the trust estate for expenses incurred in the administration of the trust and conveys the trust estate to the beneficiary without deducting the amount to which he is entitled as indemnity, he is entitled to indemnity from the

---

[4]  At the time Woody brought his reimbursement claim, the family trust retained, at most, two certificates of deposit worth approximately $20,000.

25

beneficiary personally to the extent of the property so conveyed, unless he manifested an intention to forego his claim to indemnity, or unless the beneficiary has so changed his position that it is inequitable to compel him to indemnify the trustee.

RESTATEMENT (SECOND) OF TRUSTS § 249(2) (1959).

Section 249, by its terms, does not apply here: the trustee did not convey the trust estate—the Brazoria County trial court's judgment did. We do not read section 249 as relieving Woody, as trustee, from the necessity of making his request for attorney's fees in the litigation in which they were incurred or of interposing a timely objection to the proposed asset distribution before the Brazoria County trial court signed the judgment.

Further, the comment to section 249 states that, in the case of a testamentary trust in which the trust estate is not sufficient to indemnify the trustee for expenses properly incurred by him in its administration, "the trustee is not entitled to indemnity from the beneficiary personally in the absence of an agreement to the contrary." RESTATEMENT (SECOND) OF TRUSTS § 249 cmt. a. The family trust does not contain a clawback provision; its silence on the issue requires the conclusion that its trustee is not entitled to reclaim any property from the beneficiaries who have already received their distributions.

The family trust also cites to section 279 of the Restatement (Second) of Trusts as grounds for reclaiming property to pay for trust debts. Section 279 provides:

> If a creditor is entitled by a proceeding in equity to reach trust property and apply it to the satisfaction of his claim, and the trustee conveys the trust property to the beneficiary before the claim has been paid, the creditor can by a proceeding in equity hold the beneficiary personally liable for the claim to the extent of the value of the trust property so conveyed, unless the beneficiary is a bona fide purchaser or has so changed his position that it is inequitable to hold him personally liable.

RESTATEMENT (SECOND) OF TRUSTS § 279 (1959).

Section 279 does not benefit the family trust because, as Woody concedes, the Brazoria County trial court's judgment distributed Carolyn's share of the estate to her trust before the family trust became indebted to Woody. Accordingly, neither section 249 nor section 279 provides any basis for disturbing the Brazoria County judgment.

### 4. Offset claim

Woody, his trust, and the family trust complain that the trial court erred by denying appellants' cross-motion for summary judgment and the family trust's motion for partial summary judgment seeking an offset credit. The Fourteenth Court of Appeals already considered this offset claim in the appeal of the 2009 Brazoria County judgment and held that Woody and the trusts are not entitled to an offset as a matter of law because the portion of the 2005 Brazoria County Judgment that they rely upon was previously reversed on appeal. *See Lesikar*, 2012 WL 3776365, at *11 ("To the degree we construe Lesikar to argue that his right to an offset exists as a matter of law by virtue of the 2005 Judgment, that

27

judgment was a part of the fee award that was reversed on appeal. The record does not reflect that Lesikar has either pleaded or proven the facts necessary to support an offset . . . ."). Woody already raised the offset claim in the Brazoria County suit; to the extent the offset issue was raised and decided adversely to him in the proceedings after remand, Woody did not pursue an appeal of the Brazoria County trial court's ruling on the issue. He is precluded from raising it again here. As a result, the trial court properly denied Woody's offset claim.

## III. Other Collateral Attacks

Woody and his trust challenge the trial court's summary judgment on (1) the claim for the family trust, Carolyn's trust, or Carolyn, individually, to turn over the $200,000 "note receivable" from West Houston that the Brazoria County trial court distributed to Woody's trust in its 2005 judgment, and (2) his claim that the Brazoria County judgment's provision addressing the distribution of family trust funds following Margie's death is void for vagueness. Carolyn moved for summary dismissal of both of these claims on the ground that they constitute impermissible collateral attacks on the Brazoria County judgment. A collateral attack seeks to avoid the binding effect of a judgment in order to obtain specific relief that the judgment currently impedes. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012); *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). A litigant may attack a void judgment directly or collaterally, but a voidable

28

judgment may only be attacked directly. *See Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009). A collateral attack is distinguishable from a direct attack, which includes a standard appeal, motion for new trial, or bill of review that seeks to correct, amend, modify, or vacate a judgment. *PNS Stores*, 379 S.W.3d at 271.

## A.    Note receivable claim

Woody's trust contends that it brought the turnover claim to enforce the 2005 Brazoria County judgment's disposition of the note receivable, not to collaterally attack the judgment. *See Matthews Constr. Co.*, 796 S.W.2d at 694. The Brazoria County court record belies this contention. The family trust records provided to the special master listed a $200,000 "contingent legal fee" liability, which Woody claimed was a reimbursement for legal fees that West Houston Airport had paid on behalf of the family trust in connection with a 1994 lawsuit. Based on the family trust's financial records, however, the special master ascertained that the family trust paid the legal fees in 1997, and that the $200,000 payment to West Houston was a duplicative payment. In her report, the special master created this receivable to correct the duplicative payment.

The Fourteenth Court of Appeals explained that the trial court did not adopt the special master's finding on the $200,000 "contingent fee" issue. Instead, the trial court proposed:

> Why don't we do this: Other than the allocation issue whether or not it
> was bogus, the $200,000, we will call it that, I will adopt for whatever

benefit it does the rest of her plan and reserve the right after hearing some testimony and/or argument on the $200,000 issue from both sides. . . .

*Quoted in Lesikar*, 237 S.W.3d at 373. The trial court's judgment reflects that it tried the issue, rejected Woody's position, and adopted the special master's recommendation that Woody's trust receive the $200,000 note receivable from West Houston Airport.

In his appeal of the 2005 Brazoria County judgment, Woody contended that the trial court improperly adopted the special master's report over his objections and denied him a jury trial on the contested issues. *Id.* at 371. After considering that contention, our sister court concluded that "the record supports the trial court's finding that it adopted the special master's report on June 6, 2005, and Woody's June 8 objections to the report were not timely." *Id.* at 374–75. A special master's report becomes conclusive on the issues it addresses if a party fails to object to the report before the trial court adopts it. *Owens–Corning Fiberglas Corp. v. Caldwell*, 830 S.W.2d 622, 625 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding).

The Brazoria County judgment shows that the trial court adjudicated the note receivable issue, and the Fourteenth Court of Appeals upheld its disposition. The Brazoria County judgment includes "100% of Note Receivable from Airport Co. in the amount of $200,000" among the assets to be distributed from the family

trust to Woody's trust, and orders that "the assets set aside for [Woody's trust] are to remain in the [family trust] until distributed . . . ." As the family trust's trustee, Woody was responsible for any transfer relating to the note receivable. We hold that the trial court correctly granted Carolyn's motion for summary judgment on the ground that Woody's claim for the turnover of the $200,000 note receivable constitutes an impermissible collateral attack.

### B. Validity and construction of the Brazoria County judgment

Woody and his trust contend that they were entitled to summary judgment in their favor declaring that the portion of the 2005 Brazoria County judgment regarding the distribution of funds following Margie's death is void for vagueness.

A judgment is void only when it is apparent that the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act. *Travelers Ins. Co.*, 315 S.W.3d at 863 (citing *Browning*, 165 S.W.3d at 346). Errors other than lack of jurisdiction are voidable. *Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003); *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex. 1987). Because of this distinction, when a party challenges the trial court's judgment as void, we first determine whether the alleged defect renders the judgment void or merely voidable. *See PNS Stores*, 379 S.W.3d at 272 n.8 (noting that "court's precision in

31

discussing the judgment as void or voidable is important in order to avoid engendering confusion when the distinction is material").

Woody and the trusts have not alleged or shown that the Brazoria County court lacked jurisdiction over the parties, property, subject matter, jurisdiction to enter the particular judgment, or capacity to act. *See Travelers Ins. Co.*, 315 S.W.3d at 863; *Browning*, 165 S.W.3d at 346. Because of its regularity, any defect would render the judgment merely voidable, not void and, accordingly, not subject to collateral attack. *See Browning*, 165 S.W.3d at 346. The trial court did not err in refusing to set aside the Brazoria County court's judgment on the issue.

## C. Liens on property belonging to Carolyn's trust

Woody claims that, as the family trust's trustee, he is entitled to place liens on the property that the 2005 Brazoria County judgment orders the family trust to distribute to Carolyn's trust. The judgment declares that "[p]ossession of all real property being distributed to [Carolyn's trust] shall also be turned over to [Carolyn] on or before 5 p.m. on November 30, 2008."

Woody contends that he is authorized to place liens on the property at issue and seek their foreclosure to satisfy his reimbursement claim because the Brazoria County judgment did not vest title itself, but acted against Woody in his capacity as the family trust's trustee and ordered him to convey title to the real estate and other property in question to Carolyn. He also notes that some of

his reimbursement claim is related to this litigation and is not for fees stemming from the multiple proceedings related to the Brazoria County court litigation.

Under Texas law, "[a] judgment for the conveyance of real property or the delivery of personal property may pass title to the property without additional action by the party against whom the judgment is rendered." TEX. CIV. PRAC. & REM. CODE ANN. § 31.001 (West 2008). The liens that Woody executed purported to encumber property that no longer belonged to the trust because title had passed; thus, they were not valid liens to cover current claims for reimbursement. Given that the trust has no clawback provision, Woody's reimbursement claims, to the extent that they are unrelated to the Brazoria County litigation and not precluded by res judicata, can be made only against assets currently held by the family trust. Thus, the trial court correctly rejected the liens that Woody placed against Carolyn's property.

## IV.   Fraudulent Transfer Claims

Woody and the trusts challenge the trial court's denial of their motion for summary judgment on Carolyn's fraudulent-transfer claims on the basis of res judicata. Carolyn alleges that Woody's transfer of real property that the Brazoria County judgment had set aside for Woody's trust, after the Fourteenth Court of Appeals issued its opinion and judgment reversing and remanding the attorney's fee issue for a new trial, was a fraudulent transfer under the Uniform Fraudulent

Transfer Act, because Woody knew or should have known that the trust would owe her attorney's fees. Carolyn further challenges the 2008 lien on the Lynn County property distributed to Woody's trust as an UFTA violation.[5] Woody and the family trust respond that Carolyn's UFTA claims, though they arose after the Brazoria County judgment, could have been brought in the 2010 turnover proceeding, and thus, are barred by res judicata. *See Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992) (observing that res judicata bars re-litigation of claims that have been finally adjudicated or that could have been litigated in prior action.)

A turnover proceeding is a post-judgment enforcement mechanism used to ascertain whether an asset is in the possession of the judgment debtor or subject to the debtor's control. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 227 (Tex. 1991); *Woody K. Lesikar Special Trust*, 2011 WL 3447491, at *6. If it is, the judgment creditor may be entitled to judicial assistance "through injunction or other means in order to reach [the] property to obtain satisfaction [of] the judgment . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a) (West 2008).

A turnover order operates as a mandatory injunction in that it "requires the debtor to bring to the court all documents or property used to satisfy a judgment.

---

[5] Because the Brazoria County judgment transferred the Lynn County property to Carolyn's trust before Woody filed the lien, the trustee lien did not attach to the property; thus, we need not address the fraudulent transfer claim concerning this property.

The actual effect of the bill is to require the burden of production of property which is subject to execution to be placed with the debtor instead of a creditor attempting to satisfy his judgment.'" *Kennedy v. Hudnall*, 249 S.W.3d 520, 524 (Tex. App.—Texarkana 2008, no pet.) (quoting *Buller*, 806 S.W.2d at 226). This remedy is purely procedural in nature. *Lesikar*, 2011 WL 3447491, at *6; *Cravens, Dargan & Co. v. Peyton L. Travers Co.*, 770 S.W.2d 573, 576 (Tex. App.—Houston [1st Dist.] 1989, writ denied). It does not allow for a determination of the parties' substantive rights and cannot reach property held by third parties which is not subject to the debtor's control. *Lesikar*, 2011 WL 3447491, at *6; *Cravens*, 770 S.W.2d at 576; *see also Maiz v. Virani*, 311 F.3d 334, 336 (5th Cir. 2002) (holding that Texas turnover statute may not be used to adjudicate substantive property rights of two non-judgment-debtor corporations without prior judicial determination piercing corporate veils); *Resolution Trust Corp. v. Smith*, 53 F.3d 72, 80 (5th Cir. 1995) (holding that district court erred in granting RTC's request to declare void judgment debtor's pledge of stock to his attorney in exchange for legal services because it altered third-party attorney's property rights, an issue that "must be challenged in a further proceeding"); *Buller*, 806 S.W.2d at 227 (holding that turnover statute may not be used to reach judgment debtor in her individual capacity when judgment imposed liability on that individual in her capacity as representative of estate).

The Uniform Fraudulent Transfer Act provides "an action for relief" against an allegedly fraudulent transfer or obligation. TEX. BUS. & COM. CODE ANN. § 24.008(a) (West 2009). Where a turnover proceeding provides a mechanism for enforcing an existing judgment, it does not provide a basis for recovering any additional, independent relief; its scope is limited to enforcement of an existing judgment—here, the Brazoria County judgment—through property subject to the debtor's control. And, the question of whether property is subject to the debtor's control after its purported transfer to a third party—the crux of a fraudulent transfer claim—is outside the court's jurisdiction. *See Kennedy*, 249 S.W.3d at 524 (holding that court lacked appellate jurisdiction to review "turnover" order that required sheriff to seize and sell property purportedly conveyed by judgment debtor to third party; under turnover statute, court had authority only to (1) order the judgment debtor to turn over to designated sheriff or constable, (2) require judgment debtor to otherwise apply it toward satisfaction of judgment, or (3) appoint receiver with authority to take judgment debtor's property into possession, sell it, and apply proceeds to satisfy judgment) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(b)). Carolyn's fraudulent transfer claims seek to adjudicate the validity of the liens that Woody, as trustee, placed on Carolyn's property to benefit him in his individual capacity—a claim based on facts that were not, and could not have been, litigated either in the prior case or in the turnover

36

proceeding. *See Barr*, 837 S.W.2d at 628. The trial court did not err in denying Woody and the trusts' motion for summary judgment based on res judicata.

But Carolyn did not establish her UFTA claims as a matter of law, and thus was not entitled to summary judgment on them. Carolyn's UFTA claims rest on sections 24.005(a) and 24.006(a). The portion of section 24.005(a) that Carolyn relies on declares that

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

TEX. BUS. & COM. CODE ANN. § 24.005(a)(2). Under section 24.006(a), "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." *Id.* § 24.006(a).

In her summary-judgment motion, Carolyn contended that Woody violated the UFTA by making a November 2008 deed of trust transferring to West Houston Airport a security interest in the Lynn County property held by his trust. As evidence, she relied on Woody's December 2009 affidavit, filed in the Brazoria County trial court after remand, in which he averred that he had pledged the Lynn County property "to the West Houston Airport Corporation as collateral for amounts due by its officer Woody Lesikar." Carolyn's summary judgment motion posits that Woody's affidavit testimony constitutes a judicial admission that Woody's trust received no value in exchange for the transfer. Because the transfer was intended for Woody's individual benefit and not for Woody's trust, Carolyn contends that the evidence satisfies her summary-judgment burden to establish, as a matter of law, that Woody's trust did not receive a reasonably equivalent value in exchange for the pledge.

We disagree. As we did in reviewing Carolyn's res judicata claim, we recognize the identity of interest between Woody individually and Woody as both trustee and beneficiary of his trust for purposes of evaluating the fraudulent transfer claims. On behalf of his trust, Woody executed the deed of trust on property that was adjudged to have been worth $52,500 when the Brazoria County court signed the 2005 judgment. The deed of trust recites that its purpose is to secure a $500,000 promissory note and any additional amount that may be loaned

38

by West Houston Airport to the property's owner. This evidence fails to support Carolyn's summary-judgment burden to prove conclusively that Woody failed to receive "a reasonably equivalent value in exchange for the transfer," a required element in a fraudulent transfer claim under either section 24.005(a)(2) or section 24.006(a). *See* TEX. BUS. & COM. CODE ANN. §§ 24.005(a)(2), 26.006(a).

## V.    Remaining challenges to Summary Judgment

Woody, his trust, and the family trust contend that the trial court erred in refusing to rule on their special exception to Carolyn's motion for summary judgment and on their motion for leave to supplement the summary-judgment record. These contentions lack merit. A trial court implicitly overrules special exceptions to a summary judgment motion when it grants the motion. *See Fieldtech Avionics & Instrs., Inc. v. Component Control Com., Inc.*, 262 S.W.3d 813, 824 n.3 (Tex. App.—Fort Worth 2008, no pet.); *Clement v. City of Plano*, 26 S.W.3d 544, 550 n.5 (Tex. App.—Dallas 2000, no pet.), *overruled on other grounds by Telthorster v. Tennell*, 92 S.W.3d 457, 464 (Tex. 2002); *Dagley v. Haag Eng'g Co.*, 18 S.W.3d 787, 795 n.9 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The trial court expressly acknowledged the effect of its summary-judgment ruling on Woody's special exception. Likewise, after granting summary judgment in Carolyn's favor, the trial court dismissed appellants' motion for leave to file the omitted exhibits as moot at the October 2011 hearing. In any event,

Woody does not contend that either of these rulings probably caused the rendition of an improper judgment or prevented him from properly presenting his appeal, and, as a result, neither provides a basis for reversal. *See* TEX. R. APP. P. 44.1.

## VI. Attorney's Fee Award

Woody, his trust, and the family trust contend that if we reverse summary judgment in favor of Carolyn, we must also reverse the attorney's fee award. *See Funes v. Villatoro*, 352 S.W.3d 200, 217 (Tex. App.—Houston [14th Dist.] 2011, pet denied) (reversing attorney's fee award and remanding claim because appellate disposition "substantially affect[ed] the trial court's judgment"). Carolyn requested attorney's fees under the UFTA, the Trust Code, and the Declaratory Judgment Act. Although we affirm the trial court's summary judgment with respect to Carolyn's declaratory judgment claims, we reverse the trial court's judgment with respect to Carolyn's UFTA's claims. Additionally, though we have concluded that the trial court properly rejected Woody's claim for reimbursement for fees incurred in litigating the Brazoria County case, Woody's limited claim against any remaining family trust assets, to the extent he has incurred fees and expenses associated with this suit (as opposed to the Brazoria County suit), is not barred by res judicata. Where, as here, a party seeks attorney's fees in a case where some claims permit the recovery of fees and others do not, the party must segregate and exclude the fees for services

40

related to the claims for which fees are not recoverable unless the discrete legal services advanced both the recoverable claim and the unrecoverable claim. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006). We therefore remand the case to the trial court for the purpose of determining which fees are recoverable, in light of our dispositions on the merits.

## Conclusion

We reverse the portion of the judgment granting summary judgment on Carolyn's UFTA claim and remand that claim for further proceedings. We also reverse the attorney's fee award and remand the parties' attorney's fee claims for further proceedings. We affirm the remainder of the judgment.


Jane Bland
Justice

Panel consists of Justices Bland, Sharp and Massengale.